UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYSHAWN A. HOLLOWAY,

Plaintiff,

v.

UNKNOWN AUDRIA et al.,

Defendants.

Case No. 1:25-cv-1422

Honorable Ray Kent

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's amended complaint (ECF No. 11) for failure to state a claim for the reasons detailed below. The Court will also dismiss Plaintiff's November 21, 2025, motion for leave to add an additional claim (ECF No. 8) as moot.

## **Discussion**

### I. Motion for Leave to Add Additional Claim

With his original complaint, Plaintiff filed a motion to "amend/fix/put together complaint in order to state a valid claim" (ECF No. 3) and a motion to amend his complaint to add additional violations (ECF No. 6), which were granted by this Court in an order entered on November 19,

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

2025. (ECF No. 7.) In that order, the Court directed Plaintiff to file an amended complaint within 28 days. (*Id.*)

On November 21, 2025, Plaintiff filed another motion for leave to add an additional claim. (ECF No. 8.) Plaintiff then filed his amended complaint on November 26, 2025. (ECF No. 11.) Plaintiff's amended complaint was timely filed in compliance with this Court's November 19, 2025, order, and includes all claims discussed in Plaintiff's November 21, 2025, motion for leave. Therefore, the Court will dismiss Plaintiff's November 21, 2025, motion for leave to add an additional claim (ECF No. 8) as moot and will consider Plaintiff's first amended complaint (ECF No. 11) for purposes of screening.

## II. Factual Allegations

Plaintiff is presently incarcerated at the St. Joseph County Jail, located in South Bend, Indiana. The events about which he complains, however, occurred at the Berrien County Jail, located in St. Joseph, Michigan. Plaintiff sues Head Registered Nurse Unknown Audria, Nurse Practitioner Unknown Party #1, named as Nurse Practitioner Erica (Defendant Erica), and Jail Medical Provider Vital Core Health Strategies.

In Plaintiff's complaint, Plaintiff alleges that when he arrived at the Berrien County Jail on June 12, 2025, his feet were "swollen, bloody, splitting open, and had sores." (Am. Compl., ECF No. 11, PageID.60.) Defendant Audria wrapped Plaintiff's feet but did not provide Plaintiff with pain medication or further wound care for two months. (*Id.*) Plaintiff asked to see a podiatrist but was refused. (*Id.*)

At the time that he arrived at the Jail, Plaintiff also reported that he had been using opioids daily since 2018. (*Id.*, PageID.63.) Defendant Audria did not provide Plaintiff with medication to assist with Plaintiff's withdrawal, telling Plaintiff that he was "lying" about his opioid use. (*Id.*)

As a result, Plaintiff experienced nausea, vomiting, hallucinations, and fatigue. (*Id.*) Defendant Audria did not address Plaintiff's opioid withdrawal symptoms until November 2025. (*Id.*)

Plaintiff alleges that upon intake at the Jail, Plaintiff reported that he had been prescribed Dupixent injections for the past eight years to treat his severe atopic dermatitis. (*Id.*, PageID.65–66.) Plaintiff also provided information about the pharmacy where Plaintiff received his medication so that Defendants Audria and Erica could verify Plaintiff's prescription. (*Id.*, PageID.65.) However, from June 12, 2025, until the filing of his complaint on November 26, 2025, Defendant Audria denied Plaintiff Dupixent injections needed to treat his eczema herpeticum and severe atopic dermatitis "based on cost." (*Id.*, PageID.58, 65.) Plaintiff claims that Defendant Audria made the decision to deny the medication, that Defendant Erica was "responsible for the denial of medical care," and that both Defendants Audria and Erica told Plaintiff "that its impossible for a person to have [two] different types of skin disease." (*Id.*) As a result of this denial, Plaintiff suffered raw, bleeding, burning, peeling, itchy and inflamed skin, pus-filled bumps all over his body, splitting skin on his legs and feet, pain, blurry vision, disrupted sleep, isolation from other inmates, and anxiety. (*Id.*, PageID.58, 65–66.)

Plaintiff alleges that Defendants Audria and Erica subjected Plaintiff to potential heart problems by providing Plaintiff with the maximum dosage of Benadryl and hydroxyzine. (*Id.*, PageID.61.) Plaintiff submitted grievances regarding this issue but did not receive any response. (*Id.*)

After Plaintiff submitted multiple kites and grievances, Defendants Audria and Erica had Plaintiff removed from his laundry job "due to [his] severe skin condition." (*Id.*, PageID.59, 66.) Defendant Erica also discontinued Plaintiff's order for daily Benadryl and lowered his dosage of hydroxyzine on September 21, 2025, after Plaintiff filed another grievance. (*Id.*)

On November 17, 2025, Plaintiff was examined "in medical" because of his "numerous complaints." (*Id.*, PageID.62.) At the time, Plaintiff's skin was covered in painful "hard filled pus bumps." (*Id.*) Defendant Erica mentioned that Plaintiff should be checked for skin cancer, but that he could not have it done while in jail; he needed to wait until he got out. (*Id.*)

On November 20, 2025, Plaintiff contracted MRSA (methicillin-resistant *Staphylococcus aureus*). (*Id.*, PageID.59.) Defendants Audria and Erica refused to send Plaintiff to a specialist or draw blood to determine the cause of Plaintiff's medical conditions. (*Id.*, PageID.60.)

Plaintiff also states that he suffers from "stage 4 kidney failure" and was "denied medical care." (*Id.*)

Based on the foregoing allegations, Plaintiff seeks injunctive and monetary relief. (*Id.*, PageID.68.)

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against Vital Core Health Strategies

Plaintiff lists Vital Core Health Strategies, the "Jail Medical Provider," as a Defendant. (Am. Compl., ECF No. 11, PageID.57.) A private entity, such as Vital Core Health Strategies, that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54).

The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same). Therefore, Vital Core Health Strategies cannot be held vicariously liable for

the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Instead, it may be liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508. Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injuries were the result of official policies or customs employed by Vital Core Health Strategies. The Court, therefore, will dismiss Vital Core Health Strategies as a Defendant. *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of custom or policy was conclusory, and plaintiff failed to state facts supporting the allegation).

**B. Official Capacity Claims**

Plaintiff also sues Defendants Audria and Erica in their official capacities. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55). Therefore, an official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes

of the entity they represent," and the suit is not against the official personally. *Alkire*, 330 F.3d at 810; *Graham*, 473 U.S. at 165–66.

Here, Plaintiff's amended complaint alleges that Defendants Audria and Erica are employed by Defendant Vital Core Health Strategies, the Jail Medical Provider. (*See* Am. Compl., ECF No. 11, PageID.57, 68.) Therefore, Plaintiff's official capacity claims against Defendants Audria and Erica are, in reality, claims against Vital Core Health Strategies and will be dismissed for the same reasons discussed above.[2]

**C. Medical Care Claims**

Plaintiff brings claims for denial of medical care; however, he does not specify whether he was a pretrial detainee or a convicted prisoner during each of the events alleged. While the Eighth Amendment limitation applies to "punishments," a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote and citations omitted). When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted).

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith*, 975 F.3d at 566 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and

---

[2] To the extent that Plaintiff's amended complaint may be construed as alleging that Defendants Audria and Erica are employees of Berrien County, Plaintiff's official capacity claims will likewise be dismissed because Plaintiff has not alleged facts that would plausibly suggest that his alleged constitutional injuries were the result of official policies or customs employed by Berrien County. *See Monell*, 436 U.S. at 690.

Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted).

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips*, 534 F.3d at 539–40.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). Then, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *Id.* at 392–93. *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit "modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness." *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 597 (quoting *Castro v. City of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

The Court finds that Plaintiff has alleged sufficient facts to suggest that Plaintiff suffered from objectively serious medical conditions. Although Plaintiff has by no means proven his claims at this stage of the litigation, taking Plaintiff's allegations as true, whether viewed under the Eighth or Fourteenth Amendment, the Court will allow Plaintiff to proceed with his claims of inadequate medical care against Defendants Audria and Erica.

**D. Claims Regarding Plaintiff's Use of the Grievance Process**

Plaintiff alleges that he submitted multiple grievances but did not receive any response. This allegation fails to state a claim for violation of Plaintiff's constitutional rights.

First, Plaintiff has no due process right to file a jail administrative grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th

Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, any conduct of Defendants related to Plaintiff's use of the grievance process cannot give rise to a due process claim.

Second, any actions (or inactions) of Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Third, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by

the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims related to his use of the grievance process.

**E. First Amendment Retaliation Claims.**

Plaintiff alleges that Defendants Audria and Erica retaliated against him in response to his kites and grievances by adjusting his medications and removing him from his laundry job.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff does not allege sufficient facts to state a claim of First Amendment retaliation against Defendants Audria and Erica. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v.*

*Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff alleges only that Defendants Audria and Erica adjusted Plaintiff's medications and removed Plaintiff his laundry job, "due to [his] severe skin condition" which was potentially communicable (*id.*, PageID.59, 66), after he filed kites and grievances. Yet, Plaintiff has not alleged any *facts* that would plausibly suggest that Defendants were motivated by Plaintiff's protective activities as opposed to some other factor. Accordingly, the Court will dismiss Plaintiff's claims of First Amendment retaliation.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendant Vital Core Health Strategies will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Unknown Audria and Unknown Party #1, named as Nurse Practitioner Erica: official capacity claims, claims related to Plaintiff's use of the grievance process, and First Amendment retaliation claims. Plaintiff's claims against Defendants Unknown Audria and Unknown Party #1, named as Nurse Practitioner Erica, related to the provision of medical care remain in the case. The Court will dismiss Plaintiff's motion for leave to add an additional claim (ECF No. 8) as moot.

An order consistent with this opinion will be entered.

Dated: August 13, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge